**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

IN RE: CHAPTER 11

INTERSTATE EQUIPMENT SALES & RENTALS, INC. CASE NO. 10-50280

    DEBTOR

**EMERGENCY MOTION FOR AN ORDER APPROVING
THE USE OF CASH COLLATERAL**

Comes Interstate Equipment Sales & Rentals, Inc., as Debtor and Debtor-in-Possession in the above-referenced chapter 11 bankruptcy cases (hereinafter, the "Debtor"), and hereby moves the Court for an order approving the use of cash collateral as set forth herein. In support of this Motion, the Debtor states, as follows:

1.    On January 29, 2010, the Debtor filed its voluntary bankruptcy petition for relief under chapter 11 of title 11 of the United States Code (the "Code"). The Debtor is operating its business as debtor and debtor-in-possession pursuant to Code §§ 1107(a) and 1108.

2.    This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D), (G), (K), (M) and (O). The Court can exercise its subject matter jurisdiction pursuant to 28 U.S.C. § 157(b)(1). Venue of this case and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. No request has been made for the appointment of a trustee or examiner, and no committee has been appointed in this case.

1

**Debtor's Background**

3. The Debtor is a Kentucky corporation with headquarters in Richmond, Kentucky. Originally incorporated in 1994 as Interstate Equipment and Truck Sales, Inc., the Debtor was reincorporated under its current name in March 2000 to more accurately reflect the nature of business operations. In addition to its headquarters in Richmond, Kentucky, the Debtor operates two sales and service facilities located in Richmond, Kentucky and Lockland, Ohio. The Debtor employs approximately 24 employees (although 2 of these employees are regular contract laborers). The Debtor buys, sells, leases and repairs heavy construction equipment. Since the fall of 2008, the Debtor has experienced cash flow problems attributable to the nation's economic downturn. The demand for heavy construction equipment has fallen substantially, as have the market values for Debtor's existing inventory. Similarly, demand for the Debtor's service department has waned.

4. The Debtor is in the process of implementing a turnaround business plan designed to reduce costs, improve operations, and enhance the Debtor's long-term viability. The Debtor believes that cost cutting measures, including streamlining and minimizing inventory, the rejection and/or renegotiation of certain leases, and a restructuring of debt obligation will enable the Debtor to undergo a successful reorganization.

5. As of the Petition Date, the Debtor has composite assets worth approximately $9.534 million and Secured Claims of approximately $14.529 million and Unsecured Claims of approximately $2.338 million, for total debts of $16.868 million.

## Relief Requested

6. The immediate entry of the Agreed Interim Cash Collateral Order and Notice of Hearing Date on Final Order attached hereto as **Exhibit A**.

## Grounds for Motion

7. Upon review of applicable documents and the UCC filings with the Office of the Secretary of State, it appears that Fifth Third Bank, an Ohio banking corporation, for itself and as agent for any and all affiliates of Fifth Third Bancorp (the "Bank") has a security interest in "[a]ll business assets of the Debtor, whether now owned or hereafter acquired." See UCC Filing, attached hereto as **Exhibit B**.

8. Pursuant to the Bank's liens, the Bank has an interest in Cash Collateral (as such term is defined in Code §363(a)). Thus pursuant to Code § 363 the Debtor may not use Cash Collateral without either the consent of the Bank or until after providing adequate protection to the Bank.

10. The need of the Debtor for use of Cash Collateral is essential to the continuation of this Chapter 11 case. Without the use of Cash Collateral, the Debtor cannot meet its payroll obligations to its employees. Under the Debtor's payroll system, employees are paid each Friday. A third-party provider, Paycor Payroll Services ("Paycor"), withdraws on the preceding Wednesday from the Debtor's Payroll Account at Fifth Third Bank (Account # -0803) the funds necessary to pay employees and the Debtor's related tax obligations. In other words, Paycor will (subject to the Court's approval of the Debtor's "Motion for an Order Authorizing Payment of Pre-Petition Accrued Employee Wages…" [Doc. No. 5]) draw on the Debtor's Payroll Account later today (Wednesday, February 3,

3

2010) in order to meet the Debtor's Friday, February 5, 2010 payroll obligations. The Debtor requests that the Court grant the relief sought herein effective as of the Petition Date of January 29, 2010.

12. At this time, the Debtor believes that the Bank's liens in, to and against the Collateral are valid, enforceable and were properly perfected. Additionally, the Debtor believes that the Bank's liens in, to and against the Bank's Collateral are not subject to any avoidance action pursuant to the Code or applicable non-bankruptcy law.

13. The Debtor does not know of any party with a security interest or lien in the Bank's Collateral superior to the Bank's liens. The Debtor represents that, as of the Petition Date, the value at liquidation (in place) of the Bank's Collateral most likely exceeds the amount of the Bank's indebtedness.

14. Code § 363(c)(2) provides that a debtor "may not use, sell or lease cash collateral … unless (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section."

15. As shown by the attached Agreed Order, the Bank has agreed to allow the Debtor to use its Cash Collateral, subject to approval by this Court.

16. The Debtor is unable to otherwise obtain funds, either unsecured or secured, in an amount necessary to meet payroll obligations and for the maintenance and preservation of Debtor's assets or from sources other than as provided by the Bank pursuant to the terms of this Motion.

17. Good cause has been shown for the entry of the proposed Order. Among

other things, entry of the proposed Order will allow the Debtor to maintain its operations and preserve its assets. Further, the use of Cash Collateral will allow the Debtor to pay wages and other necessary expenses necessary to facilitate a successful reorganization.

18. The Debtor proposes a two-week Interim Order with a fixed Budget authorizing the expenditures for the weeks ending February 5, 2010 and February 12, 2010 respectively. The pro-rated amounts of the budgeted reorganization forecast provided to the Court in lieu of Schedules I and J (a copy of which is attached as **Exhibit C**) would serve as the Debtor's proposed budget.

19. Because the two (2) week Budget will expire on February 12, 2010, the Debtor and the Bank expect to have a full and complete Agree Adequate Protection/Cash Collateral Order for the Court before then. The Debtor therefore needs a hearing date no later than February 12, 2010. To that extent, the Debtor requests the Court for a continued hearing date on or before February 12, 2010.

WHEREFORE, the Debtor respectfully requests the Court to enter an Order approving these notice procedures, and for all other relief to which the Debtor may appear entitled.

**NOTICE** is hereby given that this Motion shall be brought before the Court on an emergency basis at 1:30 p.m. on February 3, 2010. Notice of the hearing at which this Motion is to be heard was previously given (i) to the Office of the United States Trustee, (ii) all creditors listed in Schedules D and E of the Petition, and (iii) certain unsecured creditors of the Debtor, all as more fully provided in the Certificate of Service for the first day motions [Doc. Nos. 9 and 19].

**BUNCH & BROCK**

By: <u>/s/ W. Thomas Bunch</u>
**W. THOMAS BUNCH**
271 West Short Street, Suite 805
P. O. Box 2086
Lexington, Kentucky 40588-2086
(859) 254-5522
(859) 233-1434 FAX
**ATTORNEYS FOR DEBTOR**

Certificate of Service to be filed separately.

**EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

IN RE:                                                                                                          CHAPTER 11

INTERSTATE EQUIPMENT SALES & RENTALS, INC.                       CASE NO. 10-50280

      DEBTOR

**EMERGENCY INTERIM AGREED CASH COLLATERAL ORDER**

By agreement between Interstate Equipment Sales & Rentals, Inc. (the "Debtor") and Fifth Third Bank ("Bank") and the Debtor's "Emergency Motion For An Order Approving The Use Of Cash Collateral" (the "Motion" with all terms not otherwise defined herein taking the meaning given such terms in the Motion), having come on for hearing on February 3, 2010, and the Court having heard arguments and being advised, it is hereby ORDERED AND ADJUDGED as follows:

      1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtor's case and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (A), (D), (G), (K), (M) and (O).

      2.      Notice of the hearing at which this Motion was heard has been given (i) to the Office of the United States Trustee, (ii) all Secured Creditors and (iii) certain of the unsecured creditors of the Debtor, all as more fully provided in the Certificate of Service submitted in conjunction with the Motion. Under the circumstances, such notice of the hearing and the specific relief requested in the Motion complies with the requirements of

Bankruptcy Code § 102(1) and Bankruptcy Rule 2002. The Debtor has provided adequate notice under the circumstances pursuant to Bankruptcy Rule 4001 of the hearing to consider entry of this Order to all persons who are entitled to receive such notice.

3. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157 (b) (2) (A), (D), (G), (K), (M) and (O).

4. Based on the Debtor's allegations set forth in the Motion which remain uncontested at this time, good cause has been shown for the entry of this Order. The entry of this Interim Order is in the best interests of the Debtor's creditors and its estate. The terms of this Order, including the terms of the use of Cash Collateral and the security interests, liens, rights and priorities granted hereunder are fair under the circumstances.

5. Subject to the other terms contained herein, the Debtor is hereby authorized to use Cash Collateral only in accordance with this Order from the Petition Date through February 12, 2010 ("Term"). The Debtor may only use Cash Collateral to pay those items designated in the budget attached hereto as <u>Exhibit A</u> and incorporated herein by reference (the "Budget") up to the line item amount designated for each item to be expended and pro-rated to reflect that the Term includes only 12 of the month's 28 days. All expenditures in excess of a Line Item shall require the written consent of the Bank prior to such expenditures being made.

6. In the event of a termination of this Order, the Bank and the Debtor reserve any and all rights afforded them under applicable bankruptcy laws as to the use of Cash Collateral. In particular, the Bank reserves all rights, including, without limitation, (i) the right to move the Court for appropriate relief, including the provision of additional adequate protection, or the modification, termination and lifting of the automatic stay of

Code § 362 and authorization to foreclose and collect upon any of the Bank's Collateral, (ii) the right to demand implementation of inventory control measures, (iii) the right to demand that all of the Cash Collateral be segregated and accounted for as provided in Code § 363(c)(4), and to refuse to consent to the use of the Cash Collateral or condition such consent upon such terms and conditions as the Bank shall deem appropriate.

7. The Debtor shall send by electronic mail or facsimile to the Bank, its attorneys and the Committee's attorneys (when appointed) on each Monday in form and substance satisfactory to Debtor's Counsel and the Bank a list of all receipts and expenditures for the prior week made pursuant to the Budget, including a list of each check, payee, purpose and amount thereof. This procedure shall continue until the expiration of the term of this Order. To the extent the Debtor's records allow, the Debtor shall identify the source of all Cash Collateral on hand as of the Petition Date and all Cash Collateral received during the pendency of the case.

8. In consideration of the Bank's consent to the use of Cash Collateral by the Debtor, and as part of the adequate protection for any diminution in the value of the Bank's interests in the Bank's Collateral, including Cash Collateral, pursuant to Code §§ 361 and 363, ("Adequate Protection Claim"), the Debtor hereby grants to the Bank a first priority lien (collectively, the "Replacement Liens") subject only to any valid, enforceable, unavoidable, and fully perfected security interests in and liens and mortgages upon and, all prepetition and post-petition real and personal property of the Debtor, whether now existing or hereafter acquired or arising, including, without limitation, all cash, including, without limitation, cash proceeds, cash received from the sale of inventory, cash equivalents, bank accounts, accounts, other receivables, chattel paper, contract rights,

inventory, instruments, documents, securities (whether or not marketable), equipment, goods, fixtures, real property interests, lease interests, intellectual property, general intangibles, investment property, supporting obligations, letter of credit rights, commercial tort claims, causes of action (Except with respect to the Avoidance Actions as set forth in Chapter 5 of the Bankruptcy Code), all intercompany notes held by the Debtor, all credit balances due to the Debtor and all substitutions, accessions and proceeds of the foregoing, including insurance proceeds (collectively, "Post-Petition Bank's Collateral"). The Replacement Liens: (a) shall constitute first priority security interests in and liens on all Post-Petition Bank's Collateral subject in priority only to valid, perfected, enforceable and non-avoidable liens in existence as of the Petition Date (or thereafter perfected to the extent permitted by Code § 362(b)(3), and carveouts of the fees of the United States Trustee and the Debtor's Counsel in this case as the parties may later agree to or as fixed by the Court. The Adequate Protection Claims of the Bank shall further be entitled under Code § 507(b) to priority over any or all administrative expenses of the kind specified in Code §§ 503(b) or 507, including all professional fees allowed pursuant to Code §§ 330 and 331 except for the fees of the United States Trustee and those professionals fees allowed under a carve-out which may be negotiated in good faith by and among the Bank, the Unsecured Creditors' Committee and/or the Debtor on or before the Termination Date (as defined below) or fixed by the Court upon motion, notice and a hearing.

9. The Debtor's right to use the Cash Collateral under this Order is predicated on the Debtor reaching a more definitive agreement with the Bank on or before February 12, 2010 (the "Termination Date"); and, thus, the Debtor's right to use the Cash Collateral shall cease and terminate immediately, and without further notice unless specifically stated

Page 4

otherwise, upon the earliest of: (i) the Termination Date, unless the Bank, unanimously in its sole discretion, agrees in writing to an extension of this Order; or (ii) if any lien or security interest senior or equal to those of the Bank is granted in any Bank's Collateral or any Post-Petition Collateral other than as allowed in this Order; or, (iii) if this Court determines otherwise.

10. The Replacement Liens shall not be subject to challenge and shall attach and become valid, perfected, enforceable, non-avoidable and effective by operation of law as of the date of entry of this Order without any further action by any person, including the Debtor and the Bank without the necessity of execution by the Debtor, or the filing or recordation, of any financing statements, security agreements, vehicle lien applications, mortgages, filings with the U.S. Patent and Trademark Office, or other documents. No liens or encumbrances shall be permitted on the Post-Petition Bank's Collateral except as may be pre-existing on the Petition Date, granted pursuant to this Order, or hereafter approved in writing by the Bank. If the Bank hereafter requests that the Debtor execute an deliver financing statements, security agreements, collateral assignments, mortgages, or other instruments and documents considered by the Bank to be reasonably necessary or desirable to further evidence the perfection of the Replacement Liens, the Debtor is hereby authorized and directed to execute and deliver such financing statements, security agreements, mortgages, collateral assignments, instruments, and documents, and the Bank is hereby authorized to file or record such documents in its discretion, in which event all such documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Order. This Order shall be deemed to be a security agreement for purposes of creation, attachment and perfection of the liens on and the security interests in, to and

Page 5

against the Post-Petition Bank's Collateral.

11. Except as otherwise specifically provided herein, neither the Bank nor the Debtor waives any rights they have pursuant to the existing agreements between the Debtor, the Bank or any other party in interest, each retaining all rights available pursuant to the Bankruptcy Code or any other applicable law.

12. The rights, claims, security interests, liens and priorities of the Bank arising under this Order are in addition to, and not in lieu or substitution of, the rights, obligations, claims, security interests, Bank's Liens and priorities granted under the existing agreements between the parties.

13. The obligations of the Debtor and the rights, claims, security interests, liens and priorities of the Bank with respect to the Bank's collateral, the Post-Petition Bank's Collateral and all other transactions which occurred prior to the termination of this Order shall remain unimpaired and unaffected by any such termination and shall survive any such termination.

14. The terms and provisions of this Order shall be binding upon the Debtor and its successors and assigns, including, but not limited to, any trustee appointed in this case, in any superseding case or in any case related hereto, and shall survive to the benefit of the Bank and the Debtor, but shall not be binding on the committee. Nothing in this Order shall, however, stand or act as a binding adjudication or determination, in any way or to any extent, of the validity, priority, scope, legality, or perfection of the Bank's lien on assets of the Debtor or on the legality of the Bank's loan or lending documents and all such issues are specifically reserved for future review, evaluation and determination

15. The authority of the Debtor to use Cash Collateral shall terminate on the

earlier of (i) the date of the final hearing on the Motion which date is set forth in paragraph 19 below ("Final Hearing"), (ii) an Event of Default, or (iii) payment in full of the Bank's claim.

    16.    Each of the following events shall constitute an Event of Default:

    (i)    Entry of an order converting the Debtor's Chapter 11 cases to cases under Chapter 7 of the Bankruptcy Code;

    (ii)    Entry of an order dismissing the Chapter 11 case of the Debtor;

    (iii)    Failure to comply with any material terms, conditions, or covenants contained in this Order within five (5) business days of a written notice of default to the Debtor;

    (iv)    Entry of an order appointing a Chapter 11 trustee or an examiner.

    17.    Upon the occurrence of an Event of Default and the filing of an affidavit with this Court that the Debtor has failed to cure such default, the Debtor's authority to use Cash Collateral shall terminate and the Debtor shall immediately cease using Cash Collateral, segregate and hold such Cash Collateral in trust for the benefit of the Bank pending further order of this Court. Upon the occurrence of an Event of Default and notice thereof to Counsel and the Bankruptcy Court, the Debtor shall have seven (7) days to cure such default and to file an objection to termination of the automatic stay. If no objection is filed, the Bank shall hereby be granted relief from the automatic stay without further order.

    18.    This Order shall in no way limit the rights of the Bank to seek other or additional adequate protection, to seek relief from the automatic stay, or to take any action in these bankruptcy cases upon an Event of Default or the termination of this Order.

    19.    Nothing in this Order shall stand or act as a binding adjudication or

determination, in any way or to any extent, of the validity, priority, scope, legality, or perfection of the Bank's lien on assets of the Debtor or on the legality of the Bank's loan or lending documents and all such issues are specifically reserved for future review, evaluation and determination.

20. Any objection to the continued effectiveness of this Order shall be in writing and shall be filed with the Court and served on all attorneys of record herein on or before _____ 2010, at 5:00 p.m. A Final Hearing shall be held on _____, 2008 at \_\_\_\_ a.m., as the same may be continued or adjourned. If no objection is timely filed and served, the Court may enter a final cash collateral order. Prior to the Hearing Date, the Debtor is authorized and directed to execute and comply with the terms of this Order and is further authorized to use Cash Collateral solely under all of the terms and conditions provided in this Order.

TO BE ENTERED:

**BUNCH & BROCK**

BY:   \_\_/s/_____
     **W. THOMAS BUNCH, ESQ.**
     271 West Short Street, Suite 805
     P.O. Box 2086
     Lexington, Kentucky 40588-2086
     (859) 254-5522
     (859) 233-1434 Fax
ATTORNEYS FOR DEBTOR IN POSSESSION

**STOLL KEENON OGDEN, PLLC**

BY:   \_\_/s/_____
     **LEA PAULEY GOFF, ESQ.**
     500 W. Jefferson Street, Suite 2000
     Louisville, KY 40202
     (502) 568-5731
     (502) 562-0931 Fax
ATTORNEYS FOR FIFTH THIRD BANK

HAVE SEEN:

**MORGAN & POTTINGER, P.S.C.**

BY:     /s/_____
**TYLER POWELL, ESQ.**
133 West Short Street
Lexington, KY 40507
(859) 253-1900
ATTORNEYS FOR CUMBERLAND
SECURITY BANK, INC.


Pursuant to Local Rule 9022-1(c) W. Thomas Bunch shall cause a copy of this order to be served on each of the parties designated to receive this order pursuant to Local Rule 9022- (a) and shall file with the court a certificate of service of the order upon such parties within fourteen (14) days hereof.

Copies to:     All Parties receiving Electronic Notice in this Case

**EXHIBIT B**

**File Number: 2009-2426715-88**

**Filing date: 12/15/2009 12:57:04 PM**

**Lapse date: 12/15/2014 12:57:04 PM**

## ACTIONS

| Action | File Date | Status |
|---|---|---|
| Initial financing Statement | 12/15/2009 12:57:04 PM | Active - Filed Online |

## NAMES

| Debtor/Secured Party/Filer | Date Added | Address |
|---|---|---|
| Debtor-Interstate Equipment Sales & Rentals, Inc.<br>**Org Type:** Corporation<br>**Org ID:** 0491459<br>**Jurisdiction:** Kentucky | 12/15/2009 12:57:04 PM | 901 Four Mile Avenue<br>Richmond KY, 40475<br>USA |
| Secured party-Fifth Third Bank, an Ohio banking corporation, for itself and as agent for any and all affiliates of Fifth Third Bancorp | 12/15/2009 12:57:04 PM | 250 West Main Street<br>Lexington KY, 40507<br>USA |
| Filer-Stoll Keenon Ogden PLLC | 12/15/2009 12:57:04 PM | 300 West Vine Street, Suite 2100<br>Lexington KY, 40507<br>USA |

## COLLATERAL DESCRIPTION

| Date Filed | Collateral Description |
|---|---|
| 12/15/2009 12:57:04 PM | All business assets of the Debtor, whether now owned or hereafter acquired. |

Interstate Equipment
Reorganization Forecast
Feb 2010 - Jul 2010
Cash Budget

SCHEDULE I AND J

**EXHIBIT C**

| | | Feb-10 | Mar-10 | Apr-10 | May-10 | Jun-10 | Jul-10 | Total |
|---|---|---|---|---|---|---|---|---|
| **Revenue** | | | | | | | | |
| Rental | Direct | 324 | 450 | 456 | 550 | 631 | 606 | 3,017 |
| | Rerent | 36 | 103 | 104 | 114 | 123 | 121 | 601 |
| | | 360 | 553 | 560 | 664 | 754 | 727 | 3,618 |
| Equipment | | 1,000 | 1,750 | 1,250 | 1,850 | 600 | 700 | 7,150 |
| Support | Parts | 30 | 30 | 30 | 30 | 30 | 30 | 180 |
| **Total Revenue** | | 1,390 | 2,333 | 1,840 | 2,544 | 1,384 | 1,457 | 10,948 |
| **Costs** | | | | | | | | |
| Rental | | 29 | 82 | 83 | 91 | 98 | 97 | 481 |
| | Sale | 900 | 1,575 | 1,125 | 1,665 | 540 | 630 | 6,435 |
| | Commissions | - | - | - | - | - | - | - |
| | Other | · | · | · | · | · | · | · |
| Equipment | | 900 | 1,575 | 1,125 | 1,665 | 540 | 630 | 6,435 |
| Support | | | | | | | | |
| | Parts | - | - | - | - | - | - | - |
| | Labor | - | - | - | - | - | - | - |
| | Other | · | · | · | · | · | · | · |
| | | - | - | - | - | - | - | - |
| **Other Direct Costs** | | | | | | | | |
| Parts and Repairs | | 19 | 33 | 33 | 44 | 52 | 50 | 230 |
| Shop | | 8 | 8 | 8 | 8 | 8 | 8 | 48 |
| Freight | | 31 | 31 | 31 | 31 | 31 | 31 | 186 |
| Property Tax | | 25 | 25 | 25 | 25 | 25 | 25 | 150 |
| Total Other Direct Costs | | 83 | 97 | 97 | 108 | 116 | 114 | 614 |
| **Total Cost of Sales** | | 1,011 | 1,754 | 1,305 | 1,864 | 755 | 840 | 7,530 |
| **Gross Profit** | | 379 | 579 | 535 | 680 | 629 | 617 | 3,418 |
| **Operational Cost** | | | | | | | | |
| Labor | Wages | 102 | 102 | 102 | 102 | 102 | 102 | 612 |
| | Benefits | 20 | 20 | 20 | 20 | 20 | 20 | 122 |
| | | 122 | 122 | 122 | 122 | 122 | 122 | 734 |
| Occupancy | Lease | 28 | 28 | 28 | 28 | 28 | 28 | 168 |
| | Property Tax | 4 | 4 | 4 | 4 | 4 | 4 | 24 |
| | Utilities/Repairs | 13 | 13 | 13 | 13 | 13 | 13 | 78 |
| | Other | · | · | · | · | · | · | · |
| | | 45 | 45 | 45 | 45 | 45 | 45 | 270 |
| Advertising | | 10 | 10 | 10 | 10 | 10 | 10 | 60 |
| Vehicle Expense | | 7 | 7 | 7 | 7 | 7 | 7 | 42 |
| IT Expense | | 3 | 3 | 3 | 3 | 3 | 3 | 18 |
| Insurance | | 19 | 19 | 19 | 19 | 19 | 19 | 114 |
| Professional Fees | | 15 | 15 | 15 | 15 | 15 | 15 | 90 |
| Bad Debt Expense | | 7 | 11 | 11 | 13 | 15 | 15 | 72 |
| Other | | 7 | 7 | 7 | 7 | 7 | 7 | 42 |
| **Total Operating Expense** | | 236 | 239 | 240 | 242 | 243 | 243 | 1,443 |
| **Total Operating Profit** | | 143 | 340 | 295 | 439 | 386 | 374 | 1,976 |
| Principal and Interest | | - | 348 | 348 | 348 | 348 | 348 | 1,740 |
| Financial Charges | Income | - | - | - | - | - | - | - |
| | Expense | 15 | 15 | 15 | 15 | 15 | 15 | 90 |
| Extraordinary | Gain | - | - | - | - | - | - | - |
| | Loss | - | - | - | - | - | - | - |
| Taxes | | · | · | · | · | · | · | |
| Net Income | | 128 | (23) | (68) | 76 | 23 | 11 | 146 |
| Net Cash Flow | | 128 | (23) | (68) | 76 | 23 | 11 | 146 |
| Cumulative Cash Flow | | 128 | 105 | 37 | 112 | 135 | 146 | |

Note: Principal payment included with interest, so the impact on cash flow could be more easily seen.

Plan to use Traxx asset sale to handle any shortfall and/or timing issues of $650K